**Adam D. Ford** (4115531)
Ford & Huff LC
228 Park Avenue South
New York, NY 10003
Tel:  (213) 915-4291
Email: adam.ford@fordhufflaw.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SEMYON GRINBLAT**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>**FIRST CLASS FURNITURE AND RUGS INC., 108 CORONA REALTY CORP.,** JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown,<br><br>Defendants. | **COMPLAINT**<br><br><br>**CASE NO.: 20-cv-6048**<br><br><br>**JURY DEMANDED** |

**CIVIL COMPLAINT**

SEMYON GRINBLAT ("Plaintiff"), as and for his complaint against FIRST CLASS FURNITURE AND RUGS INC., 108 CORONA REALTY CORP., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown ("Defendants"), respectfully brings before the Court the below allegations.

**STATEMENT OF PLAINTIFF'S CLAIMS**

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and denied full and equal enjoyment of the goods, services,

1

facilities, privileges, advantages, or accommodations of a place of public accommodation owned, leased, controlled, or operated, by Defendants, FIRST CLASS FURNITURE AND RUGS INC., 108 CORONA REALTY CORP., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown.

2. Plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3. Plaintiff seeks compensatory, statutory, and punitive damages, including, but not limited to, damages for personal injuries, pain of body and mind, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because Defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## PARTIES

7. Plaintiff is, and has been at all times material hereto, a resident of Monmouth County, New Jersey.

8. Plaintiff is disabled and is expressly authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

9. Defendants, FIRST CLASS FURNITURE AND RUGS INC. and/or 108 CORONA REALTY CORP., own, and/or lease, and/or have control over, and/or operate, and at all relevant times operated, the store, "Ashley Furniture", located at 48-09 108th Street, Corona, NY 11368, hereinafter referred to as the "Subject Facility".

10. Upon information and belief, Defendant FIRST CLASS FURNITURE AND RUGS INC., owns, and/or leases, and/or has control over, and/or operates, and at all relevant times operated, the Subject Facility.

11. Defendant, FIRST CLASS FURNITURE AND RUGS INC., is an American for-profit corporation organized under the laws of New York.

3

12. Defendant, FIRST CLASS FURNITURE AND RUGS INC., is licensed to conduct business activities in New York State with the New York Department of State.

13. The New York Department of State's website shows that Defendant, FIRST CLASS FURNITURE AND RUGS INC., has the following registered agent: Spiegel & Utrera, P.A., P.C., 1 Maiden Lane, 5th Floor, New York, NY 10038.

14. The New York Department of State's website shows that if it accepts process on behalf of the entity, Defendant FIRST CLASS FURNITURE AND RUGS INC., it will mail it to the following address: First Class Furniture and Rugs Inc., 4809 108th Street, First Floor, Corona, NY 11368.

15. Upon information and belief, Defendant 108 CORONA REALTY CORP., at all relevant times was, and currently is, either an owner, landlord, lessor, lessee, or operator of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building, in which it operates.

16. Upon information and belief, Defendant 108 CORONA REALTY CORP., is a landlord and leases commercial space in its building to Defendant FIRST CLASS FURNITURE AND RUGS INC.

17. Defendant 108 CORONA REALTY CORP., is an American for-profit corporation organized under the laws of New York.

18. Neither the name, nor address, of a registered agent of Defendant 108 CORONA REALTY CORP. are provided on the New York Department of State's website.

19. The New York Department of State's website shows that it will mail process, if accepted on behalf of the entity, Defendant 108 CORONA REALTY CORP., to the following address: 108 Corona Realty Corp., 106-29 49th Avenue, Corona, NY 11368.

20. New York State law requires each corporation to have a designated registered agent, on whom service of process may be made. Under the New York Business Corporation Law, a "designating corporation is required to deliver to the department of state a certificate of amendment or change providing for the designation by the corporation of a new address and upon its failure to file such certificate, its authority to do business in this state should be suspended." BSC §306-A(a)(4). "Upon the failure of the designating corporation to file a certificate of amendment or change providing for the designation by the corporation of the new address after the filing of a certificate of resignation for receipt of process with the secretary of state, its authority to do business in this state shall be suspended… ." BSC §306-A(b) "In any case in which a corporation suspended pursuant to this section would be subject to the personal or other jurisdiction of the courts of this state …, process against such corporation may be served upon the secretary of state as its agent pursuant to this section. Such process may issue in any court in this state having jurisdiction of the subject matter." BSC §306-A(e)(1).

21. As Defendant 108 CORONA REALTY CORP., provided neither the name, nor address of its registered agent to the New York Department of State, its authority to do business in New York State is suspended pursuant to BSC §306-A. Nevertheless, service of process on it is effective, because it is served upon the Secretary of State. BSC §306-A(e)(2).

22. Defendants FIRST CLASS FURNITURE AND RUGS INC. and/or 108 CORONA REALTY CORP., operate the Subject Facility, which is a store and/or a sales establishment.

23. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New

York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

24. Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facility. At all relevant times they might have been, and currently might be, either owners, lessors, lessees, or operators of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building in which it operates. Either one or several of them might be a landlord and lease its/their building and land to Defendants, FIRST CLASS FURNITURE AND RUGS INC. and 108 CORONA REALTY CORP. Plaintiff reserves the right to amend this Complaint to add such persons or entities as defendants when discovered during the course of this action.

25. Either one of Defendants, or all of them, jointly, or severally, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or maintained, and/or altered, the building, and/or the store, and/or the Subject Facility, which is operated by Defendants FIRST CLASS FURNITURE AND RUGS INC. and/or 108 CORONA REALTY CORP.

26. Defendants are jointly and severally liable for the design, construction, maintenance, control, alteration and/or operation of the Subject Facility pursuant to 28 CFR §36.201.

## CLASS ACTION

27. Plaintiff brings this suit for declaratory and injunctive relief and as a class action, pursuant to F.R.C.P. 23, on behalf of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by Defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

28. Plaintiff, complaining for himself, and all other similarly situated disabled individuals in the City and State of New York, hereby alleges the following:

   a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

   c. The claims or defenses of the representative party are typical of the claims, or defenses, of the class;

   d. The representative party will fairly and adequately protect the interests of the class; and

   e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

29. The claims of Plaintiff are typical of those of the class. The class, similarly to Plaintiff, was also not able to have access to the Subject Facility because of the architectural barriers.

30. Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented

by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent Plaintiff in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class.

31. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, Defendants removing the architectural barriers without either compensating members of the class, or paying them compensatory, and/or statutory, and/or punitive damages, for discrimination, discomfort, personal injuries, pain of body and mind, emotional distress, inconvenience and humiliation, which the class members have suffered as a result of Defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

32. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because Defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

33. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any

questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

34. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs in the Eastern District of New York.

35. Clarity, consistency, and uniformity in law will also be preserved, as maintenance of this lawsuit as a class action will likely eliminate the possibility of inconsistent verdicts, which may be issued, if plaintiffs were to initiate individual lawsuits against Defendants.

36. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.


## STATUTORY SCHEME

37. On July 26, 1990, United States Congress enacted the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation.

38. Congress made the following findings:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
   c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation,

          communication, recreation, institutionalization, health services, voting and access to public services;

d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

39. Furthermore, Congress also explicitly stated that the ADA had to:

a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

40. Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an

individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

41. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

42. The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

43. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

44. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 CFR §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

45. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201(a) and (b)

46. The Subject Facility affects interstate commerce within the meaning of the ADA. 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5).

47. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201.

48. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

49. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 CFR §36.304

50. If an individual with a disability is dissuaded from entering, or receiving services of a place of public accommodation, because of the existence of an architectural barrier, the landlord and tenant will be guilty of discrimination on the basis of disability.

51. Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability. 28 CFR §36.304

52. Removal of the architectural barriers is readily achievable by Defendants.

53. Upon information and belief, the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Violations of the ADA

54. Plaintiff, who was born in 1949, is an elderly man aged beyond his 71st year. He suffers from debilitating diseases and was diagnosed with a neurological condition, which affects his walking. Plaintiff's treating neurologist determined that he has gait dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, Plaintiff has decreased vision due to glaucoma and is blind in the right eye. Plaintiff's gait is unsteady, and he has fallen number of times when attempting to walk short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. Plaintiff obtained the wheelchair and uses it regularly. The New Jersey Motor Vehicle Commission issued him a disabled person parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which Plaintiff is travelling. Plaintiff relies on his wheelchair and parks appropriately in handicapped accessible parking spaces. He also needs appropriate and statutorily mandated space next to that car, so that he may transfer from the car to the wheelchair. Plaintiff is disabled under the statute, which in pertinent part states that

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 CFR §36.104

55. Plaintiff's adult son visits Plaintiff, manages his care and takes him to places Plaintiff wants to visit, including stores, restaurants, parks, doctors and medical facilities in New Jersey, where he currently resides, and New York, where he previously resided for decades and where his son and friends still reside.

56. In August 2019, Plaintiff came to Defendants' Subject Facility to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at Defendants' property.

57. Either one of Defendants, or all of them, operate the Subject Facility.

58. Defendant FIRST CLASS FURNITURE AND RUGS INC. operates the Subject Facility, which is a furniture store, under the name "Ashley Furniture". It sells furniture.

59. There is a stair leading to the entrance of the Subject Facility.

60. There is a ramp leading to the entrance of the Subject Facility.

61. The ramp leading to the entrance of the Subject Facility is steep.

62. There is only one entrance to the Subject Facility.

63. The only way to enter the Subject Facility is by either climbing up the stair, or by walking or riding up the ramp.

64. Plaintiff is not able to walk up the stairs.

65. Plaintiff has to use his wheelchair to ride up the ramp to the entrance of the Subject Facility.

66. Plaintiff, who was sitting in his wheelchair, tried to enter the Subject Facility by himself, by riding up the ramp, but was not able to do so, as he was not able to rotate the wheels of his wheelchair up the steep ramp.

67. Plaintiff's son tried to push Plaintiff up the ramp, but was not able to do so, because the ramp was very steep and pushing Plaintiff up the ramp would have been very dangerous, as there was a very high likelihood that Plaintiff would fall backwards and become injured.

68. It was also not possible for Plaintiff's son to push Plaintiff, who was sitting in his wheelchair, up the ramp, because the ramp was not wide enough.

69. Frustrated, upset, and disappointed, Plaintiff requested his son to photograph him, as he was sitting in his wheelchair at the bottom of the ramp.

70. Plaintiff also requested his son to photograph him in front of the stairs.

71. While Plaintiff's son photographed Plaintiff, he was confronted by the male employee of the Subject Facility, who demanded to know the reason for the taking of the photographs.

72. The male employee of the Subject Facility demanded that Plaintiff's son stop taking photographs.

73. Plaintiff's son explained to the male employee of the Subject Facility that the man in the wheelchair is his father, who wants to enter the Subject Facility to shop there and asked whether there is a way to enter it.

74. The male employee of the Subject Facility told Plaintiff and his son that the only way to enter the Subject Facility would be by using the ramp.

75. The male employee of the Subject Facility also told Plaintiff and his son that the ramp could not be used by Plaintiff, because it is steep and narrow.

76. The male employee of the Subject Facility told Plaintiff and his son that he is going to call the police.

77. The male employee of the Subject Facility demanded to see Plaintiff's son's identification.

78. The female employee of the Subject Facility came out and stood on the top landing of the stair of the Subject Facility, by its door.

79. The female employee of the Subject Facility demanded to know what Plaintiff wanted and demanded Plaintiff's son to stop taking pictures.

80. Plaintiff's son explained to the female employee of the Subject Facility that Plaintiff wants to enter the Subject Facility to shop there and asked her whether there is a way to enter it.

81. The female employee of the Subject Facility answered that there is no way for Plaintiff to enter the Subject Facility and that he must leave.

82. The female employee of the Subject Facility repeatedly demanded that Plaintiff leaves.

83. Plaintiff's son repeated his request to the Subject Facility's employees to let Plaintiff enter the Subject Facility.

84. The female employee of the Subject Facility repeated that there is no way for Plaintiff to enter the Subject Facility and told Plaintiff and his son that she would call the police, if they do not leave.

85. Plaintiff's son then asked the female employee of the Subject Facility "are you going to call the police, because my father wants to come to the store?"

86. Plaintiff's son repeatedly asked the employees of the Subject Facility to let Plaintiff enter the Subject Facility.

87. Both male and female employees of the Subject Facility started using their phones as they talked to Plaintiff and his son. They dialed them and them talked into them.

16

88. The two employees of the Subject Facility turned their backs to Plaintiff and his son and entered the Subject Facility.

89. Frustrated, humiliated, disappointed, distressed, and angry, Plaintiff left the Subject Facility after the altercation with the Subject Facility's employees.

90. Enabling a disabled person with an opportunity and freedom to shop independently, without assistance of others, is the goal and aim of the ADA. Plaintiff was denied that opportunity by Defendants.

91. Plaintiff was denied entry to the Subject Facility by its employees.

92. The Subject Facility is in Corona, Queens, and is located not far from Plaintiff's son's home.

93. Defendants' Subject Facility is conveniently located, and Plaintiff intends to visit it, purchase furniture offered for sale in it and enjoy its services as soon as the architectural barriers are removed.

94. Plaintiff was denied entry to the Subject Facility because of the unlawful architectural barriers and therefore suffered an injury in fact.

95. Since at least August 2019, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

96. Plaintiff has difficulties visiting Defendants' Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws. The barriers to access the Subject Facility have effectively denied Plaintiff ability to visit the property and have caused him

personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

97. Because the Subject Facility is a public accommodation, Defendants are responsible for complying with the ADA. 28 CFR §36.304.

98. Defendants' Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304.

99. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodations, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodations and commercial facilities, which consist of the Title III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191, appendices B and D.

100.    Defendants are discriminating against Plaintiff, and others similarly situated, in their Subject Facility, by denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the store by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

101.    "**General.** *Ramps* on *accessible* routes shall comply with 405." 2010 Standards §405.1.

102.     "**Slope.** *Ramp* runs shall have a *running slope* not steeper than 1:12."

"**EXCEPTION:** In existing *sites*, *buildings*, and *facilities*, *ramps* shall be permitted to have *running slopes* steeper than 1:12 complying with Table 405.2 where such slopes are necessary due to *space* limitations." 2010 Standards §405.2.

103.     A slope "steeper than 1:12 but not steeper than 1:10" must not have a maximum rise greater than 6 inches (150 mm). 2010 Standards Table §405.2. Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities.

104.     A slope "steeper than 1:10 but not steeper than 1:8" must not have a maximum rise greater than 3 inches (75 mm). 2010 Standards Table §405.2. Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities.

105.     "A slope steeper than 1:8 is prohibited." 2010 Standards Table §405.2. Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities.

106.     At the Subject Facility, the lower ramp run, located between the ground level and the landing between the two ramp runs, has a slope of 52.1%, which is equivalent to 1:1.92.

107.     The lower ramp run, located between the ground level and the landing between the two ramp runs, has a 25-inch rise.

108.     The upper ramp run has a slope of 36.7%, which is equivalent to 1:2.72.

109.     The upper ramp run has a rise greater than 20 inches.

110.     "**Clear Width.** The clear width of a *ramp* run and, where handrails are provided, the clear width between handrails shall be 36 inches (915 mm) minimum." 2010 Standards §405.5.

111.     The clear width of the lower ramp run is 33.5 inches wide.

112.     The clear width of the upper ramp run is 33 inches wide.

19

113.     "**Slope.** Landings shall comply with 302. Changes in level are not permitted.

**EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §405.7.1.

114.     The landing between the lower and upper ramp runs has a slope of 36.7%, which is equivalent to 1:2.72.

115.     "**Width.** The landing clear width shall be at least as wide as the widest ramp run leading to the landing." 2010 Standards §405.7.2.

116.     The clear width of the landing located between the lower and upper ramp runs is below 12 inches, narrower than the widest ramp run leading to the landing.

117.     The widest ramp run leading to the landing, located between the lower and upper ramp runs, is 33.5 inches wide.

118.     "**Length.** The landing clear length shall be 60 inches (1525 mm) long minimum." 2010 Standards §405.7.3.

119.     The clear length of the landing, located between the lower and upper ramp runs, is below 35 inches.

120.     "**Change in Direction.** *Ramps* that change direction between runs at landings shall have a clear landing 60 inches (1525 mm) minimum by 60 inches (1525 mm) minimum." 2010 Standards §405.7.4.

121.     At the Subject Facility the ramp changes direction between runs. Its landing is below 35 inches in length by below 12 inches in width.

122.     "**Handrails.** *Ramp* runs with a rise greater than 6 inches (150 mm) shall have handrails complying with 505." 2010 Standards §405.8.

123.     "**Where Required.** Handrails shall be provided on both sides of stairs and *ramps*." 2010 Standards §505.2.

124.     Only one side of the ramp runs has handrails.

125.     "**Edge Protection.** Edge protection complying with 405.9.1 or 405.9.2 shall be provided on each side of *ramp* runs and at each side of *ramp* landings." 2010 Standards §405.9.

126.     Edge protection is provided on only one side of the ramp runs.

127.     Edge protection is provided on only one side of the ramp landings.

128.     "**Extended Floor or Ground Surface.** The floor or ground surface of the *ramp* run or landing shall extend 12 inches (305 mm) minimum beyond the inside face of a handrail complying with 505." 2010 Standards §405.9.1.

129.     As only one side of the ramp runs and landing has handrails, there is no extended floor, or ground surface, on the opposite side of the ramp and landing.

130.     "**General.** Handrails provided along walking surfaces complying with 403, required at *ramps* complying with 405, and required at stairs complying with 504 shall comply with 505." 2010 Standards §505.1.

131.     "**Height.** Top of gripping surfaces of handrails shall be 34 inches (865 mm) minimum and 38 inches (965 mm) maximum vertically above walking surfaces, stair nosings, and *ramp* surfaces. Handrails shall be at a consistent height above walking surfaces, stair nosings, and *ramp* surfaces." 2010 Standards §505.4.

132.     Top of the gripping surface of the handrail, located on the lower ramp run, is 48 inches high vertically above the ramp surface.

133.     Top of the gripping surface of the handrail, located on the upper ramp run, is 49 inches high vertically above the ramp surface.

134.     "Aisles shall comply with 403." 2010 Standards §904.3.1.

135.     "**Clearances.** Walking surfaces shall provide clearances complying with 403.5."

2010 Standards §403.5.

136.     "**Clear Width.** Except as provided in 403.5.2 and 403.5.3, the clear width of

walking surfaces shall be 36 inches (915 mm) minimum. **EXCEPTION:** The clear width

shall be permitted to be reduced to 32 inches (815 mm) minimum for a length of 24 inches

(610 mm) maximum provided that reduced width segments are separated by segments that

are 48 inches (1220 mm) long minimum and 36 inches (915 mm) wide minimum." 2010

Standards §403.5.1.

137.     Aisles between displayed furniture are less than 16 inches wide.

138.     The individual Plaintiff, and all others similarly situated, will continue to suffer

discrimination and injury without the immediate relief provided by the ADA, as requested

herein. In order to remedy this discriminatory situation, Plaintiff requires an inspection of

Defendants' Subject Facility in order to measure and photograph architectural barriers that

are in violation of the ADA to determine all of the areas of non-compliance with the law.

139.     Defendants have failed to remove architectural barriers to accessibility to the

Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

140.     Upon information and belief, since 1992 Defendants' Subject Facility has

undergone alterations to the areas, which affect, or could affect, access to or usability of

their place of public accommodation.

141.     The Subject Facility has not been designed, constructed, altered, or maintained in

compliance with the accessibility standards of Title III of the ADA.

142.     Defendants have violated their statutory obligation to ensure that their policies,

practices, and procedures address compliance with the 2010 Standards in that they did not

make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

143.    To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facility and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

144.    Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, Defendants were required to make the Subject Facility accessible to persons with disabilities and should have removed architectural barriers by January 26, 1992. To date, Defendants have failed to comply with that mandate.

145.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

146.    It was not structurally impracticable for Defendants to make the Subject Facility accessible.

147.    Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by Defendants.

148.    Defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

149.    Accommodations to Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facility by Defendants, are readily achievable, would

not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

150.   Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

151.   Defendants' failure to make their Subject Facility accessible denied Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

152.   The effect of the practices complained of has been to deprive Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facility and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained and/or operated by Defendants.

153.   Defendants' Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

154.   Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, Plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

155.   Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable. Allowing Defendants to deleteriously detrimentally prolong their practices would

encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against Plaintiff, and other similarly situated individuals.

156.     The inexcusability of Defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred Plaintiff's access, inconvenienced and embarrassed him, humiliated him and caused him personal injuries, including emotional distress to him, and others similarly situated, Defendants gave a crystal-clear message to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

157.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint as if fully set forth herein.

158.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any

such place shall be refused, withheld from or denied to any
person on account of … disability … .

NYS Executive Law §296(2)(a)

159.    Defendants' Subject Facility is a place of public accommodation as defined in New

York State Human Rights Law §292(9).

160.    Defendants have further violated the New York State Human Rights Law by being

in violation of the rights provided under the ADA.

161.    Defendants are in violation of the New York State Human Rights Law by denying

Plaintiff, and others similarly situated, full and safe access to all of the benefits,

accommodations and services of the Subject Facility.

162.    Defendants do not provide Plaintiff, and others similarly situated, with equal

opportunity to use their public accommodations.

163.    Defendants have failed to make all readily achievable accommodations and

modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

164.    As a direct and proximate result of Defendants' unlawful discrimination, which is

in violation of the Executive Law, Plaintiff has suffered, and continues to suffer, personal

injuries, which include emotional distress, including, but not limited to, humiliation,

embarrassment, stress, and anxiety.

165.    Defendants have not provided Plaintiff, and others similarly situated, with

evenhanded treatment in violation of New York State Human Rights Law §296.

166.    Defendants' direct, or indirect, unequal treatment of Plaintiff, and others similarly

situated, was demonstrated when he was discriminated against.

167.    Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

168.    Defendants have demonstrated that the patronage, or custom, of Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

169.    In violation of the New York State Human Rights Laws Defendants and their agents discriminated against Plaintiff.

170.    As a direct and proximate result of Defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, Plaintiff has suffered, and continues to suffer, personal injuries, such as mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

171.    Plaintiff requests compensatory damages from each Defendant in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).


**THIRD CAUSE OF ACTION**

**Violations of the New York State Civil Rights Laws**

172.    Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

173.    Defendants have violated Plaintiff's civil rights on the basis of his disability.

174.    Consequently, Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each Defendant.

175.    Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Laws

176.    Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

177.    The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
> 1. Because of any person's actual or perceived … disability …, directly or indirectly:
> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;

NYC Admin. Code §8-107(4)

178.    Defendants have not reasonably accommodated Plaintiff, and other disabled individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

179.    In violation of the New York City Administrative Code, Defendants have unlawfully discriminated against Plaintiff and all others similarly situated.

180.     Reasonable accommodations and modifications are necessary to enable Plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use of Defendants' Subject Facility.

181.     In violation of the New York City Administrative Code the owners, operators, lessors, lessees, proprietors, managers, agents and/or employees of Defendants' Subject Facility have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

182.     In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that the patronage, or custom, of Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

183.     Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facility.

184.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

185.     As a direct and proximate result of Defendants' disability discrimination, in violation of the New York City Human Rights Laws, Plaintiff has suffered, and continues to suffer, personal injuries, including mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

186.     Plaintiff requests compensatory damages in the amount of $1,000 from each

Defendant under the New York City Human Rights Law, NYC Admin. Code §8-125.


## ATTORNEY'S FEES AND COSTS

187.     Plaintiff had to retain the undersigned counsel for the filing and prosecution of this

action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation

expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28

CFR §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New

York City Human Rights Law, the Court may award the prevailing party reasonable

attorney's fees. Under that law's definition "prevailing" includes a Plaintiff, whose

commencement of litigation has acted as a catalyst to effect policy change on the part of

the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)


## COMPENSATORY AND STATUTORY MONETARY DAMAGES

188.    Plaintiff requests compensatory damages in the amount of $1,000 from each

Defendant under the New York State Human Rights Law, NY CLS Exec §297(9) and the

New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

189.    Plaintiff requests statutory monetary damages in the sum of $500 from each

Defendant to compensate him for their violation of New York Civil Rights Law §40-c and

§40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered… .

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

190.    The reason Plaintiff requests $500 from each Defendant, and not a lower amount

envisioned by the statutes, is due to the high number and extent of the violations, which

were alleged in detail in this complaint. Furthermore, the number of violations may be even

greater, and they may be even more extensive, than those alleged here and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

## PUNITIVE DAMAGES

191.    Plaintiff requests punitive damages from each Defendant to compensate him for their violation of the New York City Human Rights Law.

> With respect to punitive damages, "the standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" Chauca v. Abraham, 885 F.3d 122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 30 N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475, 481 (N.Y. 2017)). This standard requires "a lower degree of culpability" than is required for punitive damages under other statutes, as it "requires neither a showing of malice nor awareness of the violation of a protected right." Id. (quoting Chauca, 89 N.E.3d at 481).

Kreisler v. Humane Soc'y of N.Y., 2018 U.S. Dist. LEXIS 171147

## INJUNCTIVE RELIEF

192.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facility until the requisite modifications are completed.

193.    Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

194.    Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adapt relief ordered in <u>Shariff v. Alsaydi</u>, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provide him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. Plaintiff further requests that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

195.    Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

196.    Injunctive relief is also necessary to order Defendants to provide auxiliary aid, or service, and/or alternative methods, to allow Plaintiff, and others similarly situated, to use the place of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

**<u>DECLARATORY RELIEF</u>**

197.     Plaintiff is entitled to a declaratory judgment concerning the violations of the ADA, the New York State and the New York City laws committed by Defendants specifying the rights of Plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from Defendants' Subject Facility by Defendants and as to their policies, practices, procedures, facilities, goods and services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully requests judgment against Defendants and that this Court grants the following relief:

A.     Certifies this case as a class action;

B.     Grants a permanent injunction

i.) Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

ii.) Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, individuals with disabilities;

iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

iv.) Ordering Defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that Plaintiff

would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws; and

v.) Ordering Defendants to make the Subject Facility readily accessible to and usable by individuals with disabilities.

C.   Enters declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws and declares the rights of Plaintiff, and other persons similarly situated, as to Defendants' policies, procedures, facilities, goods and services offered to the public;

D.   Enters declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, the New York State Human Rights Law and the New York City Human Rights Law;

E.   Enters an order requiring Defendants to alter their Subject Facility and amenities to make it accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws;

F.   Holds each of Defendants liable for $500 in statutory monetary damages for each violation and awards that sum to Plaintiff pursuant to New York State Civil Rights Laws §40-c and §40-d;

G.     Holds each of Defendants liable for compensatory damages in the amount of $1,000 under the New York State Human Rights Law and the New York City Human Rights Law.

H.     Holds each of Defendants liable for punitive damages for their violation of the New York City Human Rights Law.

I.     Retains its jurisdiction over Defendants until their unlawful practices, acts and omissions no longer exist;

J.     Finds that Plaintiff is a prevailing party in this litigation and awards attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which Plaintiff, and other persons similarly situated, may be entitled; and

K.     Awards such other and further relief as it deems necessary, just and proper.


## <u>JURY DEMANDED</u>

Plaintiff demands a trial by jury of all the issues of fact and damages.


Dated: December 11, 2020


<u>/s/ Adam D. Ford</u>
Adam D. Ford, Esq. (4115531)

Ford & Huff LC
228 Park Avenue South
New York, NY 10003
Tel:  (213) 915-4291
Email: adam.ford@fordhufflaw.com
*Attorney for Plaintiff*